IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

SHARON WILSON o/b/o T.M.W.,
a minor,                                      :

    Plaintiff,                               :

v.                                            :        CA 2:12-00307-C

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]    :

    Defendant.                              :

## MEMORANDUM OPINION AND ORDER

The plaintiff brings this action on behalf of her son, T.M.W., a minor, pursuant to 42 U.S.C. § 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying an application for Supplemental Security Income ("SSI"). The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (*See* Doc. 21 ("In accordance with provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, including . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record ("R.") (Doc. 12), the plaintiff's brief (Doc. 13), the Commissioner's brief (Doc. 19), and the arguments presented at the February 15, 2013 Hearing, it is determined that the Commissioner's decision denying benefits should be **reversed and remanded** for further proceedings not inconsistent with this decision.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Colvin is substituted for Michael J. Astrue as the proper defendant in this case.

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Doc. 21 ("An appeal from a judgment

**Procedural Background**

On March 16, 2007, the plaintiff filed an application for SSI on behalf of her son, alleging disability beginning January 1, 2004 (R. 116). Her application was initially denied on July 10, 2007. (*See* R. 66-68). A hearing was then conducted before an Administrative Law Judge on April 14, 2009 (*see* R. 37-62). On June 29, 2009, the ALJ issued a decision finding no disability (R. 25-36), and the plaintiff sought review from the Appeals Council (*see* R. 19). The Appeals Council ultimately issued a decision declining to review the ALJ's determination on March 9, 2012 (*see* R. 1-13)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on May 8, 2012 (*see* Doc. 1).

**Standard of Review and Claims on Appeal**

In all Social Security appeals, including those involving benefits for an individual under the age of 18, such as this one, the task for this Court is to determine whether the ALJ's decision to deny benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or

---

entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.").)

re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Bernhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence." *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)).

On appeal to this Court, the plaintiff contends the Commissioner's decision to deny benefits should be reversed for two reasons:

1. "[T]he ALJ committed legal error by ignoring the teacher questionnaire completed by Mary Howard." (Doc. 13 at 3); and

2. "[T]he ALJ committed legal error at step three of the evaluation process." (*Id.*)

The Court will address both, but in reverse order.

## Discussion

### A.     The ALJ's analysis at step three.

An individual under the age of 18, like T.M.W. (born in 1999 (*see* R. 28)), "is considered disabled if

> he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations." 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. The Social Security regulations establish a three-step process for determining whether a child is disabled. 20 C.F.R. § 416.924(a). Under the first step, the ALJ considers whether the child has engaged in any substantial gainful activity. *Id.* At step two, the ALJ considers whether the child has an impairment or combination of impairments that is severe. *Id.* At step three, the ALJ must decide whether the child's impairment meets, medically equals, or functionally equals a listed impairment. *Id.*
>
> In determining whether an impairment functionally equals a listed impairment, the ALJ must consider the child's ability to function in six different "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) "caring for yourself;" and (6) health

> and physical well-being. 20 C.F.R. § 416.926a(b)(1). If the child has "marked" limitations in two of these domains, or an "extreme" limitation in any one domain, then his impairment functionally equals the listed impairments, and he will be found to be disabled. *Id.* § 416.926a(d). A "marked" limitation is one that seriously interferes with the child's ability to initiate, sustain, or complete activities. *Id.* § 416.926a(e)(2)(i). An extreme limitation is one that "very seriously" interferes with the child's ability to initiate, sustain, or complete activities. *Id.* § 416.926a(e)(3)(i).

*Coleman ex rel. J.K.C. v. Commissioner of Soc. Sec.*, 454 Fed. App'x 751, 752 (11th Cir. Dec. 9, 2011) (per curiam) (affirming an order of this Court affirming the ALJ's denial of SSI benefits for a minor child).[3]

The ALJ here determined that T.M.W. (1) "has not engaged in substantial gainful activity at any time relevant to this decision" (R. 28); (2) has three severe impairments: "attention deficit disorder with hyperactivity (ADHD)[,] borderline intellectual functioning[,] and speech disorder (*id.*); but (3) lacks an impairment or combination of impairments that meets, medically equals, or functionally equals a listed impairment (R. 28-36).

### 1.   The asserted error at Step Three.

On appeal, the plaintiff "asserts that the ALJ committed legal error at step three of the evaluation process" (Doc. 13 at 6), insisting that, "[d]espite [ ] evidence of record showing that the combination of TMW's impairments meets and/or medically equals

---

[3] "The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be ***severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience***. In other words, a claimant who meets the requirements of a listed impairment will be deemed ***conclusively*** disabled." *Johnson ex rel. Johnson v. Commissioner of Soc. Sec.*, No. 1:09–cv–967, 2011 WL 4954049, at *6 (W.D. Mich. Sept. 22, 2011) (noting that "[t]he structure of the mental disorders listing for children under the age of 18 parallels the structure of the mental disorders listings for adults, but is modified to reflect the presentation of mental disorders in children), *report & recommendation adopted*, 2011 WL 4954253 (W.D. Mich. Oct. 17, 2011) (citations omitted and emphasis added).

Listings 112.05 C and D and/or 112.11, the ALJ's meets and/or medically equals 'analysis' equates to two sentences that provide absolutely NO meaningful rationale[.]" (*Id.* (citing R. 28).) And the Court agrees, initially, that the ALJ's fourth finding is certainly succinct:

> **4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listing impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).**
>
> No treating or examining source or medical expert has concluded that claimant's impairments meet or medically equal listing severity. In addition, the undersigned Administrative Law Judge has examined the record and finds that the evidence does not support listing severity.

(R. 28; *see also* Doc. 13 at 7 ("In providing such conclusory analysis," the plaintiff insists, "it is not surprising the ALJ's decision fails to reference Listings 112.05 or 112.11.") (citation omitted).)

Relying on *Ellington v. Astrue*, Civil Action No. 2:07cv789-CSC, 2008 WL 1805435 (M.D. Ala. Apr. 18, 2008), the plaintiff further contends that the ALJ, in her above-provided fourth finding and in her fifth finding—that T.M.W. lacked "an impairment or combination of impairments that functionally equals the listings" (R. 28; *see also id.* at 28-36)—"failed to evaluate each tier [meets, medically equals, or functionally equals a listed impairment] individually. Instead, the plaintiff argues, "the ALJ attempted to rationalize her non-disability finding by only providing minimal rationale in her functionality findings[,]" which the plaintiff describe as "*woefully* inadequate." (Doc. 13 at 8 (emphasis in original).)

      **2.**    **Review of an ALJ's Step Three inquiry under this Circuit's law.**

As the undersigned noted recently:

5

> Whether a claimant's severe impairment(s) meets or medically equals a listing is an inquiry separate from whether his severe impairment(s) functionally equals a listing. *See, e.g., F.S. v. Astrue*, No. 1:10–CV–444 (MAD), 2012 WL 514944, at *4 (N.D.N.Y. Feb. 15, 2012) ("Equivalence to a Listing can be *either* medical or functional.") (citing, *inter alia*, 20 C.F.R. § 416.924(d)) (emphasis added).  The determinations should not be conflated, and . . . separate findings should be made as to each. *Contra Brown ex rel. M.J.A.B. v. Astrue*, Civil Action No. 1:11cv859–TFM, 2012 WL 4896087, at *12 (M.D. Ala. Oct. 15, 2012) ("When determining that M.J.A.B. 'does not have marked limitations in two of the following: age-appropriate cognitive/communicative function; age-appropriate social functioning; age appropriate personal functioning; and concentration, persistence, or pace', the ALJ improperly conflated his assessment of whether M.J.A.B. *meets or medically equals* Listing 112.05 with a determination of whether he *functionally equals* the Listing.") (emphasis in original, record cite omitted).

*Isaac ex rel. JDM v. Astrue*, No. CA 1:12–00097–C, 2012 WL 5373435, at *2 n.5 (S.D. Ala. Oct. 30, 2012) (initial citation modified; emphasis in original); *see also Muhammad ex rel. T.I.M. v. Commissioner of Soc. Sec.*, 395 Fed. App'x 593, 599 (11th Cir. Sept. 3, 2010) (per curiam) ("A child's impairment is recognized as causing 'marked and severe functional limitations if those limitations meet, medically equal, or functionally equal' an impairment described in the Listing of Impairments.  *Shinn* [*ex rel. Shinn v. Commissioner of Soc. Sec.*], 391 F.3d [1276] 1279 [(11th Cir. 2004)] (quotation and alterations omitted); 20 C.F.R. § 416.924(d).  If a child's impairment does not meet or medically equal a listed impairment, **an ALJ may still find that the child is disabled if** his impairment functionally equals a listed impairment.  *Shinn*, 391 F.3d at 1279.") (emphasis added).

However, "[i]n the Eleventh Circuit, there is no requirement that the ALJ 'mechanically recite the evidence' when determining whether a claimant's impairments meet any of the listings."  *Turner ex rel. BDT v. Commissioner of Soc. Sec.*, No. 6:10–cv–1497–Orl–GJK, 2012 WL 1004841, at *16 (M.D. Fla. Mar. 26, 2012) (quoting *Hutchison v.*

*Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)); *see also Gray ex rel. Whymss v. Commissioner of Soc. Sec.*, 454 Fed. App'x 748, 750 (11th Cir. Dec. 8, 2011) (per curiam) ("Although [an] ALJ must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination.") (citing *Hutchison*, 787 F.2d at 1463).

Moreover, "[a] finding that a claimant's impairments are not contained in the Listings may be implied from [an] ALJ's decision." *Id.* In *Gray*, in which "the ALJ did not explicitly cite Listing 112.05D, [but, like the ALJ here,] found that [the child] did not meet one of the Listings" and "properly cited the three-step process[,]" the Eleventh Circuit affirmed the ALJ's decision, citing to "evidence in the record, the ALJ *could have*" *used* to find that the child did not meet the listing—including (1) that the child's "IQ score of 66 was inconsistent with other evidence of his activities and behavior, and therefore was not conclusive[,]" *see Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) ("a valid IQ score need not be conclusive of mental retardation where the score is inconsistent with other evidence on the claimant's daily activities and behavior"), and (2) the child "did not have deficits in adaptive functioning." 454 Fed. App'x at 750 (emphasis added); *compare id.*, *with Pepper ex rel. Gardner v. Barnhart*, 342 F.3d 853, 855 (8th Cir. 2003) (where, like here, an ALJ found that a child had the severe impairments of borderline intellectual functioning and attention deficit hyperactivity disorder, but had neither an impairment medically equal to a listed impairment nor impairments that resulted in marked limitations in any of the six functional domains, the court of appeals noted, "[a]lthough it is preferable" to do so, an ALJ's failure "to address [an] impairment in relation to the specific criteria of mental retardation, under listing

112.05(D)[,] . . . is not reversible error if the record supports the overall conclusion, as it [did] in [that] case") (citations omitted); *see also Jackson ex rel. K.J. v. Astrue*, 734 F. Supp. 2d 1343, 1365 n.17 (N.D. Ga. 2010) (noting that "the Eleventh Circuit has indicated that the ALJ's lack of discussion of a specific Listing at Step Three is not fatal to the ALJ's decision") (citing *Turberville ex rel. Rowell v. Astrue*, 316 Fed. App'x 891, 893 (11th Cir. Feb. 18, 2009) (per curiam) ("We conclude that—though the ALJ did not explicitly discuss why Rowell did not actually meet Listing 112.05—substantial record evidence supports that Rowell's condition did not actually or functionally meet Listing 112.05 and, therefore, supports the ALJ's ultimate conclusion that Rowell was not disabled.")).

       **3.**      ***Ellington v. Astrue* is distinguishable, such that the ALJ's "meets" or "medically equals" determination here is supported by substantial evidence.**

In *Ellington*, the ALJ found, without explanation, that the claimant did not "meet or medically equal a listed impairment." 2008 WL 1805435, at *8. And, as to functional equivalence, "the ALJ's opinion [only discussed] the six domains of functional limitations which must be considered in determining functional equivalence[,]" leading the Court to conclude "that the ALJ [improperly] conflated the analysis which must be made in step three[.]" *Id.* (citing *Shinn*, 391 F.3d at 1278); *see also id.* ("Step three's three-tiered approach requires the ALJ to evaluate each tier individually to determine whether C.S. meets, medically equals, or functionally equals the Listings.").

Confronted with this holding, at least two district courts in this Circuit have distinguished *Ellington*. In *Mixon v. Astrue*, Civil Action No. 2:10–CV–98–TFM, 2011 WL 867213 (M.D. Ala. Mar. 14, 2011), the plaintiff faulted "the ALJ's discussion of

8

whether TR[, the minor child,] 'meets' or 'medically equals' a disability listing[,]" *id.* at *5, but the Court found no error:

> Citing *Ellington* . . . , Mixon assert[ed] the ALJ did not make "any reference to any particular Listing" and failed "to give any explanation for this finding." *Ellington* held the ALJ should have presented a three-tiered approach wherein the three means of satisfying disability criteria—meets, medically equals, or functionally equals—are distinct inquiries. *Id.* The Court [ ] reviewed *Ellington*, and [found] it distinguishable . . . . In *Ellington*, a very troubled and violent child presented symptoms applicable to multiple listings, including ADHD (112.11), psychotic disorder (112.03), and personality disorder (112.08). The ALJ's failure to specify in discussion which listing(s) did not apply, and why, prevented the Court from determining whether the adverse findings were supported by substantial evidence. The Court went on to cite reports of constant violence displayed by the child, and reversed the ALJ's finding that there was "no limitation in interacting and relating with others." *Ellington*, *id.* at *8–9.
>
> [In *Mixon*, there was] no suggestion that [the claimant] should be evaluated under any other listing but the one for ADHD (112.11). Though the ALJ did not specifically reference this listing, there [was] no confusion from the face of the record that her impairment [was] due to ADHD, and alternative listings [were] not at issue. The ADHD listing requires a showing of (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity, coupled with at least two marked impairments in age-appropriate functions of cognitive/communication, social functioning, personal functioning, or concentration, persistence, and pace. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.11. After summarizing the evidence, the ALJ found TR [did] not meet or medically equal a listed impairment. This finding [was] supported by the opinion from Dr. Estock, whose medical review concluded TR [did] not meet, medically equal, or functionally equal a listing.
>
> The Commissioner further support[ed] the ALJ's finding by highlighting Mixon's failure to submit evidence that TR met or equaled the listing for ADHD. The five-step sequential analysis set forth in regulations requires that a claimant prove that he is disabled. 20 C.F.R. §§ 404.1512(a), 416.912(a); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (the claimant has the burden of proving disability and producing evidence in support). The medical opinion from Dr. Estock supported the ALJ's conclusion that TR [did] not meet or equal the disability listing for ADHD, and there was no legal requirement that, under the circumstances, [the ALJ] seek another medical opinion.

*Id.* at *5-6 (some internal citations omitted); *see also Turner ex rel. BDT*, 2012 WL 1004841, at *16 (citing *Mixon* to also distinguish its facts from those in *Ellington*).

Here, the plaintiff asserts that record evidence should have compelled the ALJ to *explicitly* consider two Listings—112.05 (mental retardation) and 112.11 (ADHD). But—even though the claimant's severe impairments trigger consideration under two listings—because the record plainly shows that the claimant neither "meets" nor "medically equals" either listing, there is no confusion from the face of the record as to the source of the claimant's impairments, *see Mixon*, 2011 WL 867213, at *6; *contra Ellington*, 2008 WL 1805435, at *8-9, and, based on the applicable Eleventh Circuit standard,[4] the Court can find that the "meets" and "medically equals" determination (the ALJ's fourth finding) is supported by substantial evidence. *See, e.g., Barron v. Sullivan*, 924 F.2d 227, 230 n.3 (11th Cir. 1991) (stating that while it would be helpful to discuss specific listing at issue, there is no error where ALJ's finding that claimant does not meet or medically equal any listing is supported by substantial evidence).

### 4. The claimant has not proven that T.M.W. meets or medically equals either Listing 112.05 or 112.11.

"The burden lies with the claimant to *prove* that he meets or equals a Listing." *Gray ex rel. Whymss*, 454 Fed. App'x at 750 (citing *Barron*, 924 F.2d at 229) (emphasis added).

---

[4] As explained above, while the ALJ "must consider the Listings, there is no requirement that the ALJ mechanically recite the evidence leading to his ultimate determination." *Gray ex rel. Whymss*, 454 Fed. App'x at 750 (citation omitted). The ALJ's "meets" or "medically equals" analysis—although conclusory—is consistent with the law in this Circuit and, moreover, is supported by the record evidence and allows this Court to find that this analysis is supported by substantial evidence. *Compare id., with* R. 28.

- **The plaintiff has not proven that T.M.W. meets or medically equals Listing 112.05.**

While the plaintiff advocates for consideration under 112.05, based on T.M.W.'s diagnosed severe impairments and the Full Scale IQ score of 56 (R. 258), a qualifying "score and an accompanying severe impairment alone are not sufficient to satisfy [that] Listing . . . ." *Richard ex rel. Z.N.F. v. Astrue*, 480 Fed. App'x 773, 777 (5th Cir. June 15, 2012) (per curiam); *see also Elliot v. Astrue*, No. 3:09–cv–985–J–JRK, 2011 WL 1230542, at *12 (M.D. Fla. Mar. 30, 2011) ("Plaintiff mistakenly assumes that there are only two requirements to meet Listing 112.05: (1) the IQ score requirement; and (2) the requirement of a physical or mental impairment.").

> A claimant satisfies Listing 112.05(D)[, for example,][5] if (1) his impairment is "[c]haracterized by significantly subaverage general intellectual functioning with deficits in adaptive functioning;" and (2) he has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant limitation of function." *Id.* The first prong[,contained in the introductory paragraph,] is sometimes called the "capsule" requirement or the general diagnostic description that applies to all of [ ] Listing 112.05, while the second prong is one of several ways to satisfy the Listing's severity requirement.

*Richard ex rel. Z.N.F*, 480 Fed. App'x at 777 (citing *Randall v. Astrue*, 570 F.3d 651, 658 (5th Cir. 2009) ("[E]very mental disorder listing includes two independent components: a diagnostic description of the disorder and specific criteria measuring the disorder's severity.")); *see also Gray ex rel. Whymss*, 454 Fed. App'x at 750 ("[T]o be entitled to benefits, Gray must prove that her son meets both the requirements in the diagnostic

---

[5] Based on the Full Scale IQ score of 56, the plaintiff also advocates for consideration under 112.05(C), which—in addition to the plaintiff proving the claimant meets the diagnostic description of the disorder (or the "capsule" requirement)—requires a valid verbal, performance, or full scale IQ of 59 or less.

description of the introductory paragraph and the listed severity criteria in 112.05D."); *Singleton ex rel. M.T.S. v. Astrue*, Civil Action No. 2:11cv512–CSC, 2012 WL 666098, at *4 (M.D. Ala. Feb. 29, 2012) ("[I]t is not sufficient to merely demonstrate an IQ score in the appropriate range and an additional physical or mental impairment. M.T.S. is also required to demonstrate that she has deficits in adaptive functioning sufficient to satisfy the diagnostic description in the introductory paragraph of § 112.05.").

The plaintiff, simply, has not proven—or made any attempt to prove—that T.M.W. meets the Listing's "capsule" requirement, such that T.M.W. "meets" or "medically equals" Listing 112.05(C) or (D).

- **The plaintiff has not proven that T.M.W. meets or medically equals Listing 112.11.**

For a child T.M.W.'s age, the ADHD listing requires medically documented findings of (1) marked inattention; (2) marked impulsiveness; and (3) marked hyperactivity, coupled with at least two marked impairments in age-appropriate functions of cognitive/communication, social functioning, personal functioning, or concentration, persistence, and pace. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 112.11. No such findings exist in the record. (*Contra* R. 264 (Dr. Simpson finding that T.M.W. has a marked limitation in a single domain).)

**B.   The ALJ's consideration of Ms. Howard's questionnaire; failure to consider all evidence regarding functional equivalence.**

Separately on appeal, the plaintiff contends that the ALJ "completely *ignored*" a teacher questionnaire completed by Mary Howard on April 13, 2007 (R. 133-140). (Doc. 13 at 5 (emphasis in original).) Although the ALJ's decision references the questionnaire completed by Ms. Howard, T.M.W.'s teacher at Southside Primary

School, (*see, e.g.,* R. 30 & 35), the ALJ appears to only discuss evidence from Ms. Howard that supports the ALJ's ultimate conclusion that T.M.W. fails to functionally equal a listing.

For example, regarding "the functional area of moving about and manipulating objects," the ALJ states, "Ms. Howard, the claimant's teacher, rated only 6 out of 7 categories as a slight problem[,]" only rating the seventh category under that functional area, "Planning, remembering, executing controlled motor movements" as "a very serious problem." (R. 31 (discussing R. 137).) Similarly, for the functional area of health and physical well-being, the ALJ points out that "[t]he teacher questionnaire completed by Ms. Howard [ ] did not address this area." (R. 35.)

However, Ms. Howard's questionnaire contains abundant evidence—evidence the ALJ fails to address—that cuts against the ALJ's conclusion that T.M.W. does not functionally equal a listing. Under the functional area of acquiring and using information, Ms. Howard rated T.M.W. as very serious in all ten categories. (*See* R. 134; *compare id., with* R. 31 (the ALJ's discussion of this functional area, in which she makes no reference to Ms. Howard's questionnaire).) Under the functional area of attending and completing tasks, Ms. Howard rated T.M.W. as very serious in 12 of 13 categories. (*See* R. 135; *compare id., with* R. 32 (the ALJ's discussion of this functional area, in which, again, she makes no reference to Ms. Howard's questionnaire).) Under the functional area of interacting and relating to others, Ms. Howard rated T.M.W. as very serious in nine of 13 categories. (*See* R. 136; *compare id., with* R. 32-33 (the ALJ's

13

discussion of this functional area, in which, yet again, she makes no reference to Ms. Howard's questionnaire).)[6]

The ALJ could have chosen to discredit Ms. Howard's questionnaire. She could have chosen to reject it and accept Ms. Bailey's questionnaire since that questionnaire is more recent. But the ALJ cannot ignore Ms. Howard's questionnaire. And she certainly cannot "pick and choose" evidence from that questionnaire that supports her conclusion and ignore evidence that does not. The Commissioner must evaluate the evidence in its entirety, and the failure to do so leaves this Court not choice but to find that the ALJ's decision is not supported by substantial evidence.

In *Swilling ex rel. L.G.M.W. v. Astrue*, Civil Action No. 1:09cv981–CSC (WO), 2011 WL 2982522 (M.D. Ala. July 22, 2011), for example, a child's fourth grade teacher submitted a completed questionnaire regarding the six domains and indicated serious or obvious problems. *Id.* at *2. On appeal, the plaintiff argued that the teacher's assessment directly conflicted the ALJ's finding of "less than marked" limitation in a particular domain, which, plaintiff asserted, was reversible error. *Id.* Magistrate Judge Coody disagreed. He noted that,

> [e]ven thought the ALJ did not specifically state he considered the teacher's questionnaire, his general comment about opinion evidence is sufficient to show that he did consider all the evidence. Moreover, even

---

[6] Interestingly, as to all three of these functional areas—acquiring and using information, attending and completing tasks, and interacting and relating to others—the ALJ cites the same evidence to support her conclusion that T.M.W. has less than a marked limitation, stating, verbatim, under each functional area: "This limitation is supported by Dr. Anderson's testimony, ***the teacher questionnaire in the record***, treatment records regarding the claimant's improvement with medication, and the mother's testimony acknowledging improvement with medication." (*Compare* R. 31, *with* R. 32, *with* R. 33 (emphasis added).) The less detailed teacher questionnaire completed by Joann Bailey on January 14, 2009 (R. 204-206) may indeed support the ALJ's conclusions, but the evidence provided by Ms. Howard, obviously, does not.

> if it was error, it is harmless. The opinion of the ALJ shows that he carefully considered the evidence in this case and was extremely familiar with it. A remand is not required.

*Id.* at *3. Based on the ALJ's selective use of Ms. Howard's questionnaire in this case, this Court cannot reach the same conclusion here. *Cf. Green v. Commissioner of Soc. Sec.*, No. 6:09–cv–1936–Orl–28DAB, 2010 WL 4941425, at *4 (M.D. Fla. Oct. 27, 2010) ("Nor is the Court persuaded that the failure to expressly consider [ ] teacher evaluations . . . mere harmless error, as the Commissioner suggests. While the Commissioner correctly notes that 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision,' this is only true if the decision is sufficient to enable the court to conclude that the ALJ fully considered the claimant's condition. Here, the omitted evidence is not cumulative and is patently inconsistent with the ALJ's findings. Although the Commissioner contends that the failure to further evaluate the school records and the assessment was not necessary 'because any limitations therein would be inconsistent with [the] record[ ] as a whole,' this contention is unpersuasive. ***It is the ALJ's duty to evaluate the evidence and either credit it or discredit it.*** The Commissioner's contention assumes that the evidence, if evaluated, would necessarily be discredited—a conclusion that is not within the purview of a reviewing Court. It is not the task of this Court to weigh the evidence and establish whether it is consistent or inconsistent with the record in the first instance; that is the duty of the ALJ.") (emphasis added).

## Conclusion

Accordingly, it is **ORDERED** that the decision of the Commissioner of Social Security denying T.M.W. benefits be reversed and remanded pursuant to sentence four

of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

      **DONE and ORDERED** this the 28th day of February, 2013.

                                       s/WILLIAM E. CASSADY
                                       **UNITED STATES MAGISTRATE JUDGE**